UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DIMITRI FRAZIER, ET AL | * | |
| Plaintiffs, | * | CIVIL ACTION NO. 2:18-CV-2340 |
| | * | |
| VERSUS | * | |
| | * | JUDGE IVAN LEMELLE |
| | * | |
| ROBERT RUNNELS, ET AL | * | |
| Defendants. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVALD |
| | * | |
| | * | |

**************************************************************************

## MEMORANDUM IN SUPPORET OF MOTION TO QUASH SUBPOENA ISSUED TO NON-PARTY MOTTA LAW, LLC, MOTION FOR A PROTECTIVE ORDER, AND MOTION FOR AN AWARD OF ATTORNEYS' FEES

Non-party Motta Law, LLC, through its sole member, Vanessa Motta, Esq. (collectively, "Ms. Motta"), respectfully submits the following memorandum in support of her Motion to Quash, Motion for Protective Order, and Motion for an Award of Attorneys' Fees ("Motion to Quash") addressing the recent subpoena *duces tecum* issued by defendants' counsel, Guy Perrier, on December 10, 2018, and served upon Motta Law, LLC on December 14, 2018 (the "subpoena"). As set forth in detail below, Defendants' harassing, burdensome, and highly improper subpoena issued to a non-party attorney smacks of the kind of discovery abuse that Rule 45 (governing subpoenas) and Rule 26 (governing the discoverability of records) was intended to eliminate.

## INTRODUCTION AND OVERVIEW

### I.    INTRODUCTION

To be clear at the outset, Ms. Motta is neither an attorney enrolled in nor a party to this litigation and has absolutely no personal knowledge of any facts, claims, or defenses remotely relevant to this personal injury matter. ***Critically, Ms. Motta vehemently denies any suggestion that she has knowledge of any scheme to stage traffic accidents or that she participated in,***

***consented to, led, organized, or was otherwise complicit in any such scheme.*** Nonetheless, defense counsel has served a subpoena *duces tecum* upon Ms. Motta, a Louisiana attorney, and her law firm seeking a plethora of documents related to her purported representation of non-party clients in hundreds of cases over the past three calendar years in an effort to infer that Ms. Motta is involved in some nefarious and unethical involvement regarding the alleged fraudulent staging of traffic accidents by the plaintiffs in this case.  In attempting to resolve the issues related to the subpoena, Defendants have now threatened to subpoena Ms. Motta as a witness at the trial of this matter.[1]

Once and for all, it's time for Mr. Perrier and his clients to stop straddling the line of implications and inferences and those of outright accusations. Defendants have made no direct claims of fraud or misrepresentation against Ms. Motta or her firm in this case.  Instead, they carefully imply that because several non-party plaintiffs in other, unrelated cases may have engaged Ms. Motta's firm to represent them, each of those plaintiffs must be involved in a conspiracy to stage accidents. The clear implication of Defendants' rationale combined with the information now sought through the subpoena is that Ms. Motta must be somehow involved in or connected to such a conspiracy.  In other litigation, this same defense firm has stated that because other plaintiffs have retained Ms. Motta that she somehow conspired with them to bring these claims.[2]  Such extraordinary inferences and implications by Mr. Perrier and his clients should not be condoned by this or any court of law.

Ms. Motta sought to avoid this motion by engaging in written communications with defense counsel and pointing out the numerous deficiencies in his subpoena. *See* Rule 37(a)(1) Certification filed contemporaneously herewith. Yet, despite the fact that Mr. Perrier's accusations

---

[1] *See* Letter dated January 2, 2019 from Michael Robertson, attached to Ms. Motta's Motion to Quash as Exhibit A.
[2] *See* Exhibit B attached to Ms. Motta's Motion to Quash. Memorandum in Opposition to Motion to Strike Irrelevant and Scandalous Information from R. Doc. 32 in Civil Action 2:18-cv-06603 pg. 5

and tactics have already failed with at least one federal judge, Defendants intend to press forward with the improper subpoena while indicating that additional subpoenas shall be forthcoming in an effort to force Ms. Motta to testify in this matter. *See* Ex. C. Incredibly, Defendants have done all of this without even attempting to comply with Louisiana Code of Evidence Article 508, which strictly forbids the issuance of any subpoena to a Louisiana attorney without requesting the necessary hearing. Mr. Perrier's continued efforts to harass Ms. Motta in this and other cases with unfounded, unethical, and speculative insinuations must end. Ms. Motta now seeks this Honorable Court's assistance in doing just that.

Because Mr. Perrier's subpoena fails to comply in numerous regards with the Louisiana Code of Evidence and Federal Rules of Civil Procedure, it should be quashed. Ms. Motta further requests that this Court issue a protective order preventing any further harassment from Mr. Perrier and his clients. Finally, this Court should sanction Mr. Perrier and/or his clients and order them to pay, at a minimum, the attorneys' fees incurred by Ms. Motta in challenging this subpoena.

## II.   RELEVANT FACTS

### A.   Accident at Issue.

Based upon a cursory review of PACER, it is Ms. Motta's understanding that this lawsuit arises out of a November 13, 2017 car accident. As summarized in a recent ruling by this Court (Rec. Doc. 22), Plaintiffs Dimitri Frazier, Tiffany Turner, and Adonte Turner allege that defendant Robert L. Runnels was driving a semi-truck within the course and scope of his employment for Whitestone Transportation, L.L.C. when he collided into the rear of Plaintiffs' vehicle. Plaintiffs allege that the New Orleans Police Department was called and that Runnels was issued a citation for failure to use reasonable vigilance. Rec. Doc. 22.

Plaintiffs filed this lawsuit on March 4, 2018. Defendants Canal Insurance Company, Robert Runnels, and Whitestone Transportation, LLC (collectively, "Defendants") answered on

April 12, 2018. In June 2018, Defendants sought leave to file a counterclaim accusing Plaintiffs of misrepresenting and/or staging the accident and/or fabricating or exaggerating the injuries at issue in this lawsuit. Plaintiffs opposed the filing, complaining that Defendants had not alleged sufficient facts to support Defendants' allegations of fraud.  Rec. Doc. 12, ¶2.  The Court denied Defendants leave to file the proposed Counterclaim, but granted them leave to file a revised Counterclaim providing factual allegations. Rec. Doc. 14.

Defendants filed a revised Counterclaim alleging they have uncovered comments on a photo posted to plaintiff Tiffany Turner's Facebook page where an individual named Marlene Kennedy asserts that Tiffany and her kids have intentionally caused or faked accidents on the "blind side" of 18 wheelers. Defendants further allege that plaintiff Tiffany Turner has a prior conviction of forgery and that she has filed questionable insurance claims in the past. Defendants further assert that they have discovered over 30 other accidents with similar factual scenarios to the present accident, where on Interstate-10 near New Orleans, an unknown third vehicle waives down an 18-wheeler driver that is unaware that he/she was allegedly involved in an accident. Defendants allege that the accident victims in the unrelated cases had a prior relationship with at least one plaintiff in this case and may have all contacted and/or retained the same attorney.

Plaintiffs moved to strike Defendants' Counterclaim. In denying Plaintiffs' motion to strike on September 24, 2018 [Rec. Doc. 22], this Court found that the counterclaim based on fraud had been plead with sufficient particularity under Rule 9 but cautioned:

> This Court does not now consider whether Defendants will ultimately have the evidence to back up their claims or whether the circumstances alleged are sufficient to convince a jury of the alleged fraud.

Rec. Doc. 22 at 8.

**B.      The Subpoena at Issue.**

Obviously concerned by the Court's observation that Defendants may or may not have evidence to support their claims, Defendants and Mr. Perrier have taken the extraordinary step of trying to have Ms. Motta – a non-party attorney – spend countless hours researching their unfounded claims rather than conducting the necessary investigation to prove their counterclaims. Defendants issued a subpoena *duces tecum* to Motta Law, LLC, through its sole member, Ms. Motta requesting the following documents and information:

> 1.       Any and all documents, including, but not limited to, letters of representation sent to third parties and pleadings filed with any court, which indicate, state, maintain, or purport to show that Motta Law, LLC represents any claimants involved in motor vehicle accidents with a commercial vehicle on Interstate 10 in New Orleans, Louisiana between the Franklin Avenue exit and the Little Woods exit from 2016 to present.
>
> 2.       Any documents, including, but not limited to, letters of representation sent to third parties and pleadings filed with any court, which indicate, state, maintain, or purport to show that Motta Law, LLC represents any claimant listed in the chart attached as Exhibit "A."
>
> 3.       A complete list of any and all phone numbers and phone providers associated with, used by, or in any way facilitating telephone communications for Motta Law, LLC and/or Vanessa Motta, Esq. from 2016 to present.[3]

Read together, the subpoena and Defendants' counterclaim implies that Ms. Motta is directly involved in or somehow complicit to some conspiracy to defraud insurance companies by staging accidents.  It is one thing for Mr. Perrier to allege that a party plaintiff has engaged in fraud or misrepresented the events of a particular accident. It is an entirely different animal for a lawyer to allege – or worse, to casually imply without any evidence whatsoever – that an attorney and officer of the court participated, facilitated and/or condoned such fraud.

On December 27, 2018, Ms. Motta sent via certified mail, facsimile, and e-mail to Mr. Perrier her written objections to the subpoena *duces tecum* in an effort to resolve the issues without

---

[3] A copy of Defendants' subpoena is attached to Ms. Motta's Motion to Quash at Exhibit C.

the need for court intervention.  Rule 37(a)(1) Certification at ¶ 1. On January 2, 2019, Ms. Motta received a written response from Michael Robertson, Mr. Perrier's colleague, on behalf of Perrier & Lacoste, LLC. *Id*. at ¶ 2.  In his response, Mr. Robertson informed Ms. Motta that his firm has now "obtained certified copies of applicable court filings as you suggest in your letter."  *Id*. However, Mr. Robertson failed to withdraw any other requests subject to the subpoena issued to Ms. Motta. *Id*. To date, Mr. Perrier has been unwilling to withdraw the subpoena to which a response is required by January 7, 2018.  *Id*. at ¶ 3. As a result, as of the date of this filing, Ms. Motta and Mr. Perrier have been unable to resolve their dispute regarding the validity and appropriateness of the non-party subpoena. *Id.* at ¶ 4.  *See also* Ex. A.

> ### C.    Additional Background on Ms. Motta's Marketing of 18-Wheeler Cases and Mr. Perrier's Defense Tactics.

Defense counsel's attack upon Ms. Matta has become personal as this is not the first time Mr. Perrier and his firm has implied that Ms. Motta is involved or leading a conspiracy to stage accidents without a single shred of evidence. Defense counsel bases his accusation primarily on two observations: (1) Ms. Motta has been retained by a number of plaintiffs in several 18-wheeler accidents; and (2) a large number of those accidents took place along the same stretch of I-10 in Orleans Parish involving "side-swipe" claims.  From there, Defendants make the leap that Ms. Motta is somehow connected to conspiracy to defraud insurance companies.

Defense counsel twists reality and misconstrues facts to create an illusion of fraud to fit his client's needs. However, Defense counsel's grand conjecture ignores obvious and actual reasoning why Ms. Motta's firm is fortunate enough to be retained to handle these cases. First, Ms. Motta engages in extensive direct marketing for cases involving 18-wheelers.  For quite sometime, Ms. Motta purchased billboard advertising which shows her kicking an 18 wheeler.  Additionally, her business cards show that she is kicking an 18-wheeler and directly marketing to the public that she wants to and does handle cases involving 18 wheelers. Additionally, Ms. Motta did extensive radio

advertising and sponsoring shows. Ms. Motta is very active in civil events and has sponsored events in the New Orleans area for years, passing out beer koozies and cards and having banners advertising her services. Based upon these efforts, Ms. Motta meets with perspective clients, reviews the accident reports, and otherwise screens perspective clients and their allegations to the best of her ability for accepting the case. She has and continues to pride herself on referrals from friends, family, neighbors and word of mouth as well from current and former clients.

Second, there are a number of reasons why so many 18-wheeler accidents involving allegations of "side-swipe" situations occur along the area in question. The portion of I-10 at issue consists of separate one-way traffic lanes divided by a six-foot concrete divider between the North and South traffic lanes. There is virtually no chance of a head-on collision in that area. Since there are no cross over streets on the interstate, there is no chance for an intersectional, stop sign or red-light negligence action. The only accidents that occur on the interstate are rear-ending and side-swiping accidents resulting from improper lane usage. A recent study performed on just a two mile radius in I-10 of the **14 mile** radius to which Defendants refer to in the subpoena (between Franklin Ave. to Little Woods Exit) demonstrated that, from 2016-2018 alone, **over 2,050 reported accidents occurred on that 2 mile stretch of I-10.**[4] This does not include cases where the parties merely exchanged insurance information and no such report was made. In fact, as recently as January 2, 2019, several news outlets reported on problems associated with the dangers of traveling on I-10 in New Orleans East due to improper lighting.[5] In short, no one can argue that the area at issue represents a dangerous stretch of road. If Plaintiff had the money and

---

[4] *See* Exhibit D. This number fails to include such instances where an 18-wheeler may have exchanged information with the other party and neither party called the police or exchanged information due to the fact that sometimes it takes law enforcement hours to arrive at the scene and the safety risks that come with remaining on the side of the interstate for long periods of time.

[5] On January 2, 2019, several news outlets reported on problems associated with the dangers associated with traveling on I-10 in New Orleans due to improper lighting. https://www.wwltv.com/article/news/new-orleans-east-residents-say-dense-fog-and-limited-lighting-is-a-major-concern/289-0c685832-3633-4e09-999d-b0fa06b57beb

resources to do a study to expand the radius from 2 miles to the 14 miles that defendant referenced, then common sense dictates that the number of accidents on that 14 mile stretch of Interstate 10 referenced by Defendants would likely add up to over 10,000!!!!

While defense counsel is quick to make career-threatening accusations based on speculation and generalization, Mr. Perrier and his clients ignore his own choice in tactics in defending these types of cases. For example, based solely upon pleadings filed in other cases, defense counsel, Perrier & Lacoste represents various insurance defendants in more than forty cases involving 18-wheeler "side-swipes" in the Civil District Court for the Parish of Orleans and the Eastern District of Louisiana.  And, in virtually every case, Mr. Perrier's clients consistently deny that they caused the accident and in many cases allege that the plaintiff(s) engaged in fraud by staging accidents. In doing so, Mr. Perrier and his clients "attack" both party and non-party plaintiffs (and now their legal counsel) by implying that the cases are part of a broader conspiracy and somehow linked by some familiar relationship between the various plaintiffs and/or by their respective legal counsel.

Mr. Perrier's tactics have obviously succeeded as his firm continues to be retained in virtually every case involving Ms. Motta.  However, despite their efforts to ruin Ms. Motta's reputation by implying that she is somehow involved or complicit in an alleged conspiracy, neither the Defendants nor Mr. Perrier in this or other litigation has produced a single shred of proof of any fraud in any case handled by Ms. Motta.  As Ms. Motta has explained to Mr. Perrier time and again, if he can provide any semblance of evidence of fraudulent conduct on the part of any client, Ms. Motta would withdraw immediately.

## LEGAL ARGUMENT

## I.    LEGAL STANDARDS

### A.    Motion to Quash

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of subpoenas in federal court. Rule 45 mandates that the Court quash a subpoena that requires disclosure of privileged or other protected matter or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iii) and (iv). Whether a burdensome subpoena is reasonable must be determined according to the facts of the case such as the party's need for the documents and the nature and importance of the litigation. *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998). Among the factors that the court may consider in determining whether there is an undue burden are relevance of the information requested, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. *Id.*; *Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir. 2004).

### B.    Motion for Protective Order

In addition to quashing a subpoena, pursuant to Federal Rule of Civil Procedure 26(c), for good cause, the Court may enter a protective order to protect a party from annoyance, embarrassment, oppression or undue burden or expense. Fed. R. Civ. P. 26(c). The Court has broad discretion to protect a party with a protective order on a showing of good cause. *Id.*; *Smith v. Bic Corp*, 869 F.2d 194, 199 (3d Cir. 1989). To determine good cause, the Court must weigh the movant's privacy interests in the information and its burden of producing the information against the nonmovant's and the public's right to obtain the information. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-36 (1984). Pursuant to Rule 26(b)(2), discovery:

> shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source

that is more convenient, less burdensome, or less expensive; (ii) the party seeking the discovery had, had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden of expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2).

## II.   DEFENDANTS' SUBPOENA SHOULD BE QUASHED AND A PROTECTIVE ORDER SHOULD ISSUE.

Defendants' efforts to subpoena a non-party attorney ignores the strict requirements imposed by Louisiana Code of Evidence Article 508, tramples upon the attorney-client privilege of Ms. Motta's clients, and imposes an unfair burden upon Ms. Motta. For these reasons, as fully demonstrated below, Defendants' subpoena should be quashed and a protective order should issue to prevent further harassment, cost, and expense at the hands of Defendants and their counsel

### A.    The Subpoena Should Be Quashed Because Defendants Failed to Comply with Louisiana Code of Evidence Article 508.

Louisiana Code of Evidence Article 508 requires a contradictory hearing be conducted before any subpoena or court order shall be issued when a party desires to obtain information from a lawyer obtained during his representation of a client or former client.  La. Code Evid. art. 508; *Plotkin v. North River Ins. Company*, No. 12-1077, 2012 WL 2179103 (E.D. La. 6/12/12) (M.J. Knowles). *See also National Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle*, 94-322 (La. App. 3 Cir. 11/2/94), 649 So. 2d 642.  Courts have confirmed time and again that Article 508 applies equally in federal court cases grounded in diversity under Federal Rule of Evidence 501.  *See, e.g.*, *Plotkin*, 2012 WL 2179103, *1, 5-6; *Keybank Nat'l Ass'n v. Perkins Row Assocs., L.L.C.,* No. 09–497, 2010 WL 1252328, *3 (M.D. La. 3/24/10). *See also Hall v. Louisiana*, No. 12-657-BAJ, 2014 WL 1652791, at *4 & n.4 (M.D. La. 4/23/14).

Louisiana Code of Evidence article 508 provides:

A.    Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any civil or juvenile proceeding, including

pretrial discovery, …., where the purpose of the subpoena … is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless, after a contradictory hearing, it has been determined that the information sought is not protected from disclosure by any applicable privilege or work product rule; and all of the following:

1.  The information sought is essential to the successful completion of an ongoing investigation, is essential to the case of the party seeking the information, and is not merely peripheral, cumulative, or speculative.

2.  The purpose of seeking the information is not to harass the attorney or his client.

3.  With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.

4.  There is no practicable alternative means of obtaining the information.

La. Code Evid. art. 508(A)(1)-(4).  Article 508 prevents the issuance of a subpoena until, after a hearing, a court determines that the information sought is not protected by disclosure and the party seeking disclosure satisfies four other factors.  *Plotkin*, 2012 WL 2179103 at *5-6.

It is undisputed that Defendants have ignored the strict requirements of Article 508. Instead, they have pressed forward without a hearing in an effort to intimidate and harass Ms. Motta.  In such circumstances, the appropriate remedy is to quash the subpoena and issue a protective order preventing similar tactics in this case.  *See Alexander v. Cannon Cochran Management Services, Inc*., No. 09-4614, 2011 WL 13203102, *2 (E.D. La. 3/31/11) (J. Englehardt) (granting motion to quash subpoena directed to attorney for lack of compliance with Article 508).  *See also Plotkin*, 2012 WL 2179103 at *6 (granting motion to quash and motion for protective order under Article 508); *Keybank Nat'l Ass'n,* 2010 WL 1252328 at *3 (denying motion to compel after finding that Article 508 requires a contradictory hearing and a determination that the information sought is not protected from disclosure by any applicable privilege and the party seeking disclosure has satisfied the four other factors).  Defendants' subpoena should be quashed on this ground alone.

### B.     The Subpoena Improperly Seeks Privileged and/or Protected Documents.

The crux of Mr. Perrier's subpoena to Ms. Motta, a non-party attorney, is to invade her client files rather than undertaking his own efforts to satisfy his fishing expedition. For example, Mr. Perrier seeks "any and all documents … which indicate, state, maintain, or purport to show that Motta Law, LLC represents any claimants involved in motor vehicle accidents" in an area in New Orleans East.  *See* Exhibit C at p. 1. Mr. Perrier also seeks "any and all phone numbers and phone providers" used by Ms. Motta to communicate with her current and former clients so that he can drill into those communications.  *Id*.  With all due respect, undersigned counsel takes her ethical and professional obligations extraordinarily serious and, as a result, would never voluntarily identify her current or former clients when such a disclosure would reveal the reason for which legal services were sought (as strictly prohibited by La. Code Evid. Art. 506), explain or identify her communications related to a particular case, and voluntarily turn over portions of her client files.

Indeed, courts rarely, if ever, force an attorney – let alone a non-party attorney – to disclose such information and, instead, warn that information contained in client files or which otherwise reveal client identification should be sought through other means.  *See, e.g.*, *Levy v. Maloney*, 95-0333 (La. 3/24/95), 652 So.2d 522 (discovery of information held by attorneys and related to their practice must be conducted with recognition that such materials are available only under exceptional circumstances and only where information sought cannot be obtained through other means since such information consists of confidential and/or pledged matters that affect no only attorney but "are also great concern of that attorney's clients").

Ms. Motta's records should not be subjected to production simply because a defense attorney wants to find out who she may or may not have communicated with and when.  Such discovery, if forced to comply, would make a mockery of the attorney-client relationship and the

sanctity of client files.  Because the subpoena requires disclosure of a portion of Ms. Motta's client files which contain information that could lead to the identify of Ms. Motta's former and current clients and reveal the purposes for which they retained her, the subpoena must be quashed on this additional basis.  La. Code Evid. art. 506; Fed. R. Civ. P. 45(c)(3)(iii); *In re E.E.O.C.,* 207 Fed. Appx. 426, 2006 WL 3420135 (5th Cir. 2006).


     **C.**     **The Subpoena Improperly Seeks Information from a Non-Party Attorney That Defendants Can Obtain from Other Sources.**

In addition, Mr. Perrier is attempting to subpoena information from a non-party lawyer that is otherwise available from other sources. In essence, Mr. Perrier wants Ms. Motta to do his investigative work for him by having her review hundreds of her own case files, and identify, pull, and copy correspondence that, by his own admission, are otherwise available from third parties. Mr. Perrier goes as far to demand that Ms. Motta obtain and produce "certified copies" of such communications.[6]  Federal law does not condone such abuses of the discovery process.

Where the information sought from a non-party is available from the adverse party or another source, a non-party subpoena should be quashed. *See Westinghouse Electric Corp. v. Carolina Power & Light Co.*, 1992 WL 370097, *1 (E.D. La. Nov. 30, 1992) (motion to compel non-party discovery denied because the information was obtainable from other sources). Similarly, a third-party subpoena must be quashed when the request is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see Carroll v. Variety Children's Hosp.*, 2007 WL 2446553, *2 (E.D. Tex. Aug. 23, 2007) (granting motion to quash third-party subpoena).

---

[6] *See* Ex. A. Originally, Defendants demanded Ms. Motta to review hundreds of her files and identify and obtain certified copies of **legal pleadings** that, by his own admission, are in the public record.  After Ms. Motta issued written objections, Defendants seemingly acquiesced on such a demand.  *Id*.

Mr. Perrier seeks "any and all documents" including "letters of representation sent to third parties" since 2016. All of these materials, to the extent that they exist, are available to Mr. Perrier if he would take the time and effort and undertake the costs of doing so. For example, Defendants have outlined details related to 77 accidents and related lawsuits in New Orleans East (Orleans Parish) for which he seeks third-party communications. He has identified the plaintiffs, the defendant commercial defendants, the date of the accident, and the location of the accident but then asks Ms. Motta to produce "all pleadings" filed in those cases. Ex. C at p. 2. With this information, Mr. Perrier's firm can issue subpoenas within the insurance industry; an industry he knows intimately given the fact that his client base is made up in large part by insurance companies. Mr. Perrier can likely obtain this information directly from many of his own clients. But, instead, Defendants and Mr. Perrier would prefer that Ms. Motta do their job for them.

Mr. Perrier and his team can contact the New Orleans Police Department and/or Louisiana State Police office and obtain whatever police reports they desire with the information that have in hand to compare accidents. Whether such reports are relevant or admissible would be for this Court to decide. Alternatively, defense counsel can do what he has done in other cases in which he has made similar claims of fraudulent staging of accidents. In other cases, Mr. Perrier has retained an expert witness to go through every accident that has occurred on Interstate 10 in the time period from which defendant seeks records and compare accidents.

Quite simply, Defendants have numerous avenues available to them to obtain the information they claim they need without burdening Ms. Motta or impeding upon her client's files or her phone records. If Mr. Perrier is intent on trying to convince a jury that accident similarities rise to the level of fraud, he can do so without involving a non-party attorney, forcing her to spend countless hours in reviewing her files when such information is otherwise available to him, and accusing her of being involved in some conspiracy to defraud the insurance industry.

Rather than prepare his case for trial, counsel seems determined to collaterally attack Ms. Motta and other plaintiff attorneys as well as non-parties who have nothing to do with this litigation.

###     D.      The Subpoena is Unduly Burdensome.

Defendants' subpoena also violates federal law by unquestionably imposing an extreme and undue burden on Ms. Motta.  For this separate and independent reason, the subpoena should be quashed and/or a protective order should issue herein.  Whether a subpoena imposes an undue burden is a question of reasonableness determined by balancing the benefits and burdens of the requested discovery, and whether the information is obtainable from an alternative source. *See Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 263 F.R.D. 395, 399 (W.D. Tex. 2009) (citing *Positive Black Talk v. Cash Money Records*, 394 F.3d 357, 377 (5th Cir. 2004)).

The Fifth Circuit, in *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004), set forth several factors in determining whether a subpoena presents an undue burden including (i) the relevance of the requested information; (ii) the need of the party for the documents; (iii) the breadth of the requests; (iv) the time period covered by the requests; (v) the particularity with which the party described the requested records; and (vi) the burden imposed. Furthermore, where the requests are directed to a non-party, the court may consider the expense and inconvenience to that entity, as well.  *Id*. Though the *Wiwa* factors discuss the concept of undue burden under Rule 45 of the Federal Rules of Civil Procedure (governing subpoenas), the reasoning is equally applicable to Rule 26's constraints regarding the scope of discovery and its pronouncement that the court may limit discovery or impose a protective order if it finds that the discovery sought imposes an undue burden or is available from a less burdensome source.  *See* Fed. R. Civ. P. 26(b)(2)(B), 26(b)(2)(C), 26(c)(1).

As demonstrated below, Defendants' subpoena satisfies a number of the undue burden factors set forth in *Wiwa*. Under these circumstances, this Court has sufficient grounds to quash

the subpoena and "good cause" to issue a protective order under Rule 26(c) because this subpoena imposes an undue burden. *S.E.C. v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006) (quashing subpoena request finding that request for records was unduly burdensome and noting that majority of records may already be available from other sources); *see also* Fed. R. Civ. P. 26(b) (noting that the court may limit or disallow discovery if the discovery sought imposes an undue burden or is available from a source that is less burdensome); Fed. R. Civ. P. 26(c)(1) (permitting the court for good cause to issue an order to protect a person from undue burden).

> **1.    Defendants cannot demonstrate a legitimate need for the information requested in the subpoena.**

As an initial matter, it is impossible to imagine any legitimate need for Ms. Motta's third-party communications in unrelated litigation matters for other, non-party clients.  Even if Ms. Motta complied fully with the subpoena, the information would simply show who Ms. Motta represented and for what purpose. That sort of information fails to support Defendants' claims that the plaintiffs in this particular engaged in any fraudulent conduct.

 Defendants' counterclaim asserts a claim for fraud against parties other than Ms. Motta. Louisiana law defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. The elements of a Louisiana fraud and intentional misrepresentation claim are: 1) a misrepresentation of a material fact; 2) made with intent to deceive; and 3) causing justifiable reliance with resultant injury. *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008).   None of the information sought from Ms. Motta is needed in, let alone relevant to, this individual case.

In fact, the materials requested of Ms. Motta are sought by Defendants to support an identical fraud claim that at least one federal judge has previously dismissed.  On October 24, 2018, in *Kierra Thomas, et al v. Randall Chambers*, No. 18-4373, Doc. No. 20, Chief Judge Vance

granted a personal injury plaintiff's Rule 12(b)(6) motion to dismiss the same sort of fraud counterclaim by Mr. Perrier and another insurance client finding that such a fraud claim is not legally cognizable based upon the same set of facts.   *See* Ex. E, attached to Ms. Motta's Motion to Quash. Judge Vance concluded:

> Any assertion that defendants depended upon or trusted plaintiffs' alleged misrepresentations is facially absurd, because defendants are contesting them in this litigation. It therefore defies comprehension how defendants have justifiably relied on plaintiffs' representations and been injured as a result.

Ex. E. at p. 8.  Quite simply, Defendants cannot demonstrate any legitimate need for Ms. Motta's client information.

## 2. The subpoena seeks irrelevant information that is not reasonably calculated to lead to admissible evidence.

Even if Defendants can articulate a legitimate need for Ms. Motta's client files, such information is entirely irrelevant to the claims at issue in this particular case. Courts have incorporated relevance as a significant factor when determining motions to quash a subpoena. *See, e.g.*, *Winter v. Bisso Marine Co., Inc.*, 2014 WL 3778833, at *1 (E.D. La. July 29, 2014); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center*, 211 F.R.D. 659, 662 (D. Kan. 2003). Relevance in the context of analyzing undue burden is measured according to the standard of Rule 26(b)(1). *Id.* Discovery of matters not reasonably calculated to lead to discovery of admissible evidence is not within the scope of Rule 26(b)(1). *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).  Courts have not hesitated to quash non-party subpoenas and/or issue protective orders when, as is the case here, a party seeks information and documents not relevant to its claims of defenses at issue in a particular case.[7]

---

[7] *See, e.g., Bagwell v. Rival Consumer Sales Corp.*, No. 06-117, 2006 WL 2883137 (W.D. Tex. Sept. 19, 2006) (granting motion to quash subpoena issued to non-party employee because information related to business and financial records were not relevant to negligence claim against named defendant); *Volvo Trucks North America*, Inc. *v. Crescent Ford Truck Sales, Inc.*, No. 02-CV-3398, 2005 WL 1400463, at *2-4 (E.D. La. June 1, 2005) (granting protective order against efforts to seek discovery on irrelevant topics); *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 390 (N.D. Tex. 2003) (granting non-party's

Whether or not Ms. Motta may have represented non-party plaintiffs in other cases is entirely irrelevant to Defendants' claims in this case. As this Court previously indicated, if Defendants' counterclaims of fraud and misrepresentation are to be believed, Defendants must convince a jury through admissible evidence that Plaintiff Tiffany Turner – **not Ms. Motta** – "made questionable insurance claims," "has been convicted of forgery," "made misrepresentations in Plaintiffs' Complaint in an attempt to collect damages from the Defendants for an incident that did not occur or was staged," or "convinced other family members to pursue other, similar fraudulent claims." Rec. Doc. 22 at p. 7. None of these allegations are directed to Ms. Motta or her firm.

Instead, the subpoena seeks discovery from a non-party lawyer regarding non-party clients in other litigation. The information sought from Ms. Motta bears no relevance to whether a plaintiff in this particular case staged the accident at issue or lied about her injuries. Ms. Motta is not a party to this case and has no factual knowledge of the allegations, negotiations or the underlying facts of this case other than a review of the pleadings on PACER. Despite their efforts to ruin Ms. Motta's reputation by implying that she is somehow involved or complicit in an alleged conspiracy, <u>neither the Defendants nor Mr. Perrier in this or other litigation has produced a single shred of proof of any fraud in any case handled by Ms. Motta</u>. As Ms. Motta has explained to Mr. Perrier time and again, if he can provide any semblance of evidence of fraudulent conduct on the part of any client, Ms. Motta would withdraw immediately. He has not.

---

motion for protective order where discovery sought information between companies not named and not at issue in the underlying litigation); *United Steelworkers of America, AFL-CIO v. Allegheny Ludlum Corp.*, 2002 WL 31002836, at *2 (W.D. Pa. May 29, 2002); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (noting that courts have incorporated relevance as a factor when determining motions to quash). *See also Pinero v. Jackson Hewitt, Inc.*, No. 08-3535, 2009 WL 3031179, at *4 (E.D. La. Sept. 16, 2009) (quashing overbroad subpoenas that could not lead to discovery of admissible evidence).

3.   **The phone numbers and phone providers of Motta Law are equally irrelevant to a case in which the firm does not represent any party.**

Incredibly, Defendants also seek "a complete list of any and all phone numbers and phone providers … used by, or in any way facilitating telephone communication for Motta Law, LLC and/or Vanessa Motta, Esq. from 2016 to present." Exhibit A. at p. 1. There is absolutely no legal basis for Defendants or their attorney to request this sort of irrelevant, confidential, and overbroad information from a non-party let alone a non-party lawyer[8]; none, whatsoever.

As an initial matter, Ms. Motta's phone records[9] are wholly irrelevant to the case at hand. Even when phone records are tenuously or remotely relevant to a particular case, courts are reluctant to require their production. For example, in *Winter v. Bisso Marine Co., Inc.*, 2014 WL 3778833, at *1 (E.D. La. July 29, 2014), defendants issued a subpoena to the plaintiff's non-party phone carrier. Defendants argued that the phone records were relevant because a comparison ***might*** reveal information relevant to plaintiff's claim that the accident at issue caused him to have ongoing mental and physical problems.  Defendants argued that "the records will reflect the frequency and duration of plaintiff's use of the cell phone and therefore will reflect the degree of his impairments."  Magistrate Judge Wilkinson rejected this sort of relevance argument and granted plaintiff's motion to quash.  The court further explained:

> The assumptions behind this contention are <u>too tenuous</u> to support a finding that the requested records are relevant to any party's claim or defense. The subpoena is not reasonably calculated to lead to the discovery of admissible evidence. <u>To whatever extent the materials sought may have some tangential relevance to the subject matter involved in the action, Bisso Marine has not articulated good cause to expand the scope of discovery to such matters</u>. Fed. R. Civ. P. 26(b)(1).

Id. at *1-2 (emphasis added).

---

[8] The Louisiana Code of Evidence further mandates that no subpoena shall be issued to an attorney when the information sought is "merely peripheral, cumulative, or speculative."  La. Code Evid. art. 508(A)(1).

[9] While defense counsel has not issued a subpoena to undersigned counsel's phone provider of the office phone and/or cell phone(s) carrier of counsel, there is little doubt that the subpoena is simply the first step in that process.  Otherwise, there would be no need to seek such phone information.

Critically, federal courts in Louisiana routinely quash requests for phone records when the subpoena is used, as is the case here, to "fish" for evidence of fraud and misrepresentations based upon speculation and conjecture.  Recently, in *Howard v. Seadrill Americas, Inc*., No. 15-2441, 2016 WL 7012275 (E.D. La. 12/1/16), Magistrate Judge Roby granted plaintiff's motion to quash a subpoena issued to a non-party phone carrier seeking the production of plaintiff's cell phone records.  Just as Defendants are attempting to do in this case, the defendants in *Howard* sought the records "to make a fraud argument based solely on plaintiff's decision to obtain legal counsel and seek another medical opinion."  *Id.* at *3.  Plaintiffs also argued defendant's attempt to obtain the cell phone records were "a veiled attempt by the Defendant to discover the 'mole' that is referring injured employees of the Defendant to Plaintiff's counsel."  *Id*.

Magistrate Judge Roby rejected defendants' efforts to try and use the phone records in such a speculative manner.  The court noted that the scope of discovery is limited under Rule 26(b)(1) to matters that are both "relevant" and "proportional" and ultimately concluded that plaintiff's cell phone records were not important nor relevant to resolving the issues in the case at hand noting that "[h]ere, the Court is skeptical that the telephone records themselves are relevant to any claim or defense."  *Id.* at *3. In granting plaintiff's motion to quash the non-party subpoena, Magistrate Judge Roby explained:

> However, the Court should not find that the cell phone records are important to resolving the issues …. Moreover, given the Plaintiff's privacy interest in his phone records, the burden of having those records produced likely outweighs the benefit of knowing the exact timing of the Plaintiff reaching out counsel.

*Id*. at *4.

Similarly, in *Dileo v. Lane*, No. 12-522, 2013 WL 5409214, *1 (M.D. La. 9/25/2013), the Middle District of Louisiana rejected defense counsel's attempt to use a subpoena to access a party's cell phone records because the records had no relevance. The defendants argued that the records were relevant because plaintiff "<u>may</u>" have communicated with another individual currently

in litigation against them and that the records "may" contain information relevant to their defense. In granting plaintiff's motion to quash, the district court concluded:

> [D]efendants want to go through the plaintiff's cellular telephone records to find out if they [made complaints of discrimination to supervisors]. This is more like a fishing expedition than discovery reasonably calculated to lead to the discovery of admissible evidence.

*Id*. at *1 (emphasis added).

The results reached in *Howard*, *Winter*, and *Delio*, should be no different in Ms. Motta's case.  If anything, Ms. Motta's position is stronger than the challenging parties in those cases given the fact that Defendants are seeking to obtain the phone records of a law firm and attorney who are not even a party to the case at hand.  Defendants are at best speculating and perhaps hoping that Ms. Motta's phone records may show a pattern of fraud among various non-party plaintiffs in unrelated cases who may or may not know each other.  No matter the outcome, defendants certainly have succeeded at harassing and abusing any sense of professionalism with Ms. Motta.  Perhaps this is part of their strategy to get more business from other trucking companies, but nevertheless, these abuses are precisely the sort of "tenuous" and "speculative" rationale that the courts rejected in *Howard*, *Winter*, and *Delio*.  Defendants seek to intrude upon a non-party's privacy (and her clients' attorney-client privilege) to obtain records which are neither relevant nor reasonably calculated to lead to relevant evidence. At a bare minimum, Ms. Motta's significant privacy interests in her phone records as an attorney which should be viewed with higher scrutiny than a regular non-partyand the burden of having those records produced outweigh any benefit of knowing who Ms. Motta may represent or even spoken with in any capacity in unrelated personal injury cases.

### 4.    The subpoena places an undue burden upon Ms. Motta.

Courts routinely prohibit vague, overbroad, and burdensome requests such as those issued by Defendants upon Ms. Motta in this case.[10]  The "breadth" of the requests by Defendants requires the undersigned counsel to go through each and every case she has handled over the past three years and determine if the mile marker areas of hundreds of accidents are actually the places where the accident took place as opposed to some other area in New Orleans East.  These records are not always readily available and would require an inordinate amount of time for Ms. Motta to undertake this unnecessary process.  Ms. Motta is not paid by the hour like defense counsel and the time it will take to satisfy the subpoena will substantially impact Ms. Motta – a solo practitioner – and her active practice.  This sort of discovery will require a review of every single case that Ms. Motta has ever seen, taken, or denied for that matter.  If defense counsel wants this information, he can obtain it from other sources using his own time, energy, and expense.  Ms. Motta – who has nothing to do with this case – should not be burdened to search all of her files for "any and all documents" that fit Defendants' speculation was what they might show. Forcing Ms. Motta to go through every case she has ever had during a time period whereupon over 2000 accidents took place in some "alleged area" is the very definition of "unduly burdensome."

---

[10] *See, e.g. Wiwa.*, 392 F.3d at 820 (holding subpoena that requested materials involving nonparty's dealings with the Nigerian government was overbroad); *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 39 (1st Cir. 2003) (request for "all documents received, reviewed or generated by Heidelberg … relating to the possible acquisition of an ownership interest in or other business affiliated with [other company]" quashed when extreme burden outweighed marginal relevance); *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (discovery request seeking documents pertaining to companies not at issue in the underlying litigation was overbroad); *Evans v. Allstate Ins. Co*., 216 F.R.D. 515, 518 (N.D. Okla. 2003) (protective order granted when notices of deposition sought irrelevant information and encompassed subject areas that were overbroad); *United States v. Medtronic, Inc*., 2000 WL 1478476, at *1-5 (D. Kan. 2000) (protective order issued when requests sought nationwide discovery over 20 year period); *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998) (finding document request asking for "any and all documents" involving three individuals relating to the subject lawsuit as being overbroad); *Anderson v. Shell Oil Co*., 1996 WL 280792, at *1 (E.D. La. 1996) (notices of deposition duces tecum requesting all regulatory filing material over ten-year period quashed as overbroad and burdensome); *In re Independent Service Organizations Antitrust Litig*., 168 F.R.D. 651, 654 (D. Kan. 1996).

### III.   MR. PERRIER AND/OR DEFENDANTS SHOULD BE RESPONSIBLE FOR MS. MOTTA'S ATTORNEYS' FEES IN BRINGING THIS MOTION.

Rule 45(d)(1) of the Federal Rules of Civil Procedure provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  Where a subpoena is issued in disregard of this rule, a court may impose an "appropriate sanction -- which may include lost earnings and reasonable attorney's fees..." *Id*. Similarly, an award of fees and expenses is expressly authorized by Rule 26(c)(3) of the Federal Rules of Civil Procedure (governing the issuance of protective orders), which refers to Rule 37(a)(5) of the Federal Rules of Civil Procedure, requiring the Court to award fees and expenses in connection with the filing of a successful motion for protective order, unless Defendants can show its position was "substantially justified." *See* Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5); *Muslim Community Assoc. of Ann Arbor v. Pittsfield Township*, No. 12-10803, 2015 WL 5132583, at *2 (E.D. Mich. Apr. 24, 2015) (permitting party winning a motion for protective order to seek fees and expenses in connection with litigating motion). Similarly, regarding Ms. Motta's request for a protective order, Rules 26(c)(3) and 37(a)(5) of the Federal Rules of Civil Procedure further provide that expenses may be awarded if a motion for protective order is granted where, like here, an individual or entity resists overbroad, irrelevant, and harassing discovery requests.  Fed. R. Civ. P. 26(c)(3).

In this case, Ms. Motta has attempted to avoid the issues addressed in this motion.  In response, Mr. Perrier and/or his clients have blatantly chosen to disregard and bypass Louisiana Code of Evidence article 508 and ignore the fundamental safeguards required by Federal Rule of Civil Procedure 45.  The issuance of the subpoena has placed a tremendous burden on Ms. Motta – a solo practitioner – who has been forced to incurred significant costs and expenses to defend against this improper subpoena and who has been torn away from her caseload to deal with a subpoena in a case in which she is not the attorney and to constantly defend her good name and

23

reputation.  Ms. Motta is now left with no choice but to ask for sanctions in this matter as a potential means to stop defense counsel and his clients from this continued harassment.

Quite simply, Defendants' efforts represent a complete abuse of the discovery process. Defendants and their counsel have failed to take "reasonable steps" – actually, any steps (including the proper request for an Article 508 hearing, the narrowing of the requests or withdrawal of the subpoenas after being specifically advised as to the improper nature and irrelevant targets of its subpoenas) – to avoid imposing an undue burden or expense upon Ms. Motta.  As a result, sanctions are now appropriate. *See, e.g. American Federation of Musicians of the United States and Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 57-59 (N.D. Tex. 2015) (ordering the payment of attorneys' fees in connection with the successful filing of a motion to quash where requests were overbroad and imposed substantial burden); *Gilbreath v. Cumberland County Board of Education*, No. 5:11-CV-627, 2014 WL 6606566, at *1-2 (E.D.N.C. Nov. 19, 2014) (imposing sanction of attorneys' fees in quashing of subpoena that imposed undue burden); *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A, 2013 WL 5652759, at *2-4 (W.D.N.Y. Oct. 15, 2013) (granting motion to quash subpoena to non-party and awarding costs and attorneys' fees incurred by non-party as sanction for overbroad subpoena).

## IV.    CONCLUSION

Motta Law, LLC and Vanessa Motta, Esq. pray that their Motion to Quash and/or Motion for Protective Order be granted; that Defendants' subpoena *duces tecum* to be quashed and/or that a protective order issue preventing the issuance of any further subpoenas to Motta Law, LLC and/or Ms. Motta in this case; that the Court award Ms. Motta's costs, fees, and expenses incurred in preparing this motion under Rules 26(c), 37(a)(5), and 45(c) of the Federal Rules of Civil Procedure; and that the Court grant all such other and further relief as warranted and appropriate.

Respectfully submitted,

__/s/ Vanessa Motta_____
**Vanessa Motta #36915**
**MOTTA LAW, LLC**
855 Baronne Street, 2nd Floor
New Orleans, LA 70113
Telephone: (504) 670-9490
Facsimile: (504) 513-3122
Email: vanessa@ mottalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the following pleading has been delivered to all counsel of record, either through the CM/ECF system, or by depositing a copy of same in the United States mail, first class postage prepaid at their last known address of record, or by hand delivery, or by e-mail or by facsimile transmission on January 6, 2019.

_____/s/ Vanessa Motta_____